COZEN O'CONNOR
A Pennsylvania Professional Corporation
Jacob C. Cohn, Esquire
Matthew J. Siegel, Esquire
Liberty View Suite 300
457 Haddonfield Road
Cherry Hill, NJ 08002-2220
(856) 910-5000

Attorneys for Plaintiffs, Commercial Union Insurance Company, now known as OneBeacon
America Insurance Company, and American Employers Insurance Company

| | |
|---|---|
| COMMERCIAL UNION INSURANCE COMPANY, n/k/a ONEBEACON AMERICA INSURANCE COMPANY, and AMERICAN EMPLOYERS INSURANCE COMPANY, by its transferee, PENNSYLVANIA GENERAL INSURANCE COMPANY, <br><br>     Plaintiffs <br><br>        v. <br><br> RENAISSANCE ESTATES, L.P.; RENAISSANCE MANAGEMENT, INC.; and RENAISSANCE CONSTRUCTION CO., <br><br>     Defendants. | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY <br><br> DOCKET NO.: <br><br><br>        Civil Action <br><br><br><br><br> **COMPLAINT FOR DECLARATORY JUDGMENT** |

Plaintiffs Commercial Union Insurance Company, now known as OneBeacon America

Insurance Company, and American Employers Insurance Company, by its transferee

Pennsylvania General Insurance Company ("American Employers") (collectively referred to as

"OneBeacon") by their attorneys, Cozen O'Connor, by way of Complaint for Declaratory

Judgment and other relief, state as follows:

## NATURE OF THE ACTION AND RELIEF SOUGHT

1.      This is a civil action for declaratory relief against all Defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201.

2.      As set forth more fully below, OneBeacon seeks a declaration that it owes no obligation to indemnify the Renaissance Defendants in connection with the claims asserted against them in the civil action captioned *Renaissance Condominium Association, Inc. v. Renaissance Estates, L.P., et al.*, Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1152-05 ("the Civil Action").  OneBeacon is entitled to such a declaration because, *inter alia*, the claims asserted against the Renaissance Defendants in the Civil Action are not covered under the terms of the OneBeacon policies (defined below), and/or are excluded from coverage under those policies.

## THE PARTIES

3.      Commercial Union Insurance Company, now known as OneBeacon America Insurance Company, is an insurance company organized and existing under the law of the Commonwealth of Massachusetts with its principal place of business located at One Beacon Lane, Canton, Massachusetts.  OneBeacon was, at all times relevant hereto, authorized to transact business in the State of New Jersey.

4.      American Employers is an insurance company organized and existing under the law of the Commonwealth of Massachusetts, with its principal place of business located at One Beacon Lane, Canton, Massachusetts.  American Employers was, at all times relevant hereto, authorized to transact business in the State of New Jersey.

5.      Upon information and belief, Defendant Renaissance Estates, L.P., ("Renaissance Estates") is a New Jersey limited partnership which maintains a principal place of business at 3455 Highway 66, Neptune, New Jersey 07753.

6.      Upon information and belief, Defendant Renaissance Management, Inc., ("RMI") is the general partner of Renaissance Estates, and maintains its principal place of business at 3455 Highway 66, Neptune, New Jersey 07753.

7.      Upon information and belief, Defendant Renaissance Construction Company ("Renaissance Construction"), is a New Jersey corporation which maintains its principal place of business at 1 Riviera Drive, West End, New Jersey 07740.

8.      Defendants Renaissance Estates, RMI, and Renaissance Construction are referred to collectively as "the Renaissance Defendants."

## JURISDICTION AND VENUE

9.      This action is being brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 for the purpose of determining a question of actual controversy between the parties as more fully set forth below.

10.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 because the Civil Action was filed in the State of New Jersey and the underlying facts alleged in the Civil Action occurred in New Jersey; and, all of the operative events, facts and circumstances surrounding the Renaissance Defendants' insurance claim have taken place within the District of New Jersey.

12.     This Court has jurisdiction over the named Defendants because, upon information and belief, each named Defendant is a citizen of, was authorized to do business in, or resided in, the State of New Jersey within the time period relevant to the claims stated herein; or has transacted business within New Jersey by, *inter alia*, doing a series of acts in New Jersey for the

purpose of realizing pecuniary benefit, or contracting to supply services in New Jersey; or has consented to the jurisdiction of this Court.

13.     An actual case in controversy of a justiciable nature exists between OneBeacon and the Defendants involving the rights and liabilities of the parties under the policies of insurance issued by OneBeacon to the Renaissance Defendants.

## THE INSURANCE POLICIES AT ISSUE

14.     American Employers Insurance Company issued a commercial general liability policy for the period July 1, 2000 to July 1, 2001 ("the American Employers Policy"), providing limits of $1 million per occurrence and $2 million aggregate.  The named insured under the American Employers Policy is Renaissance Estates.

15.     Commercial Union issued a commercial umbrella policy for the policy periods July 1, 2000 to July 31, 2000, and July 31, 2000 to July 1, 2001, providing limits of $5 million per occurrence and in the aggregate over the American Employers Policy for the policy period July 1, 2000 to July 1, 2001 (collectively, "the Commercial Union Policy").  The named insured is Renaissance Estates.  RMI and Renaissance Construction are insureds by Long Form Name Endorsement.

## THE UNDERLYING CIVIL ACTION

16.     This declaratory judgment action seeks to determine OneBeacon's insurance coverage obligations in connection with the Civil Action, which was commenced by the Renaissance Condominium Association ("the Association") on March 11, 2005 in the Superior Court of New Jersey, Law Division, Monmouth County, Docket No. L-1152-05.

17.     The Complaint in the Civil Action has been amended numerous times.  The Twelfth Amended Complaint was filed on March 20, 2008.  A copy of the Twelfth Amended Complaint is attached hereto as Exhibit A.

18.     The Civil Action was filed by the Association to recover compensatory, consequential, incidental, punitive and statutory damages, attorneys fees, interest and costs from parties who participated in the sale, development, design, construction and management of the Renaissance on the Ocean Condominium ("the Renaissance") in Long Branch, New Jersey, as more fully set forth in the Twelfth Amended Complaint.

19.     The Twelfth Amended Complaint alleges that Defendant Renaissance Estates was "the Developer" of the Renaissance and is alleged to be the sponsor, developer and general contractor that created, designed, constructed and sold the units at the Renaissance.

20.     The Twelfth Amended Complaint alleges that Defendant RMI is the general partner of Renaissance Estates.

21.     The Twelfth Amended Complaint alleges that Defendant Renaissance Construction was hired by Renaissance Estates to create, design, and/or construct and/or purchase goods and services relating to the creation, design, and/or construction of Renaissance.

22.     The Renaissance consists of 87 units in four different buildings and single family homes and townhouses.  The Association claims that the Renaissance Defendants improperly designed and constructed various common elements of the Renaissance, including the roofs, fire suppression system, decks, sewage system, garages, electrical and HVAC systems, and water meter pits.  The Association further alleges that the Renaissance Defendants improperly installed a synthetic stucco exterior insulation finish system ("EIFS") on the exterior walls of the Renaissance.

23.     The Association is comprised of all of the unit owners of the Renaissance who automatically became Members of the Association upon acquisition of their units.  The claims alleged in the Twelfth Amended Complaint are asserted on behalf of the Association and its Members.

24.     The Twelfth Amended Complaint alleges that the Members relied on the representations of Renaissance Estates and its agents that the Renaissance would be constructed with the finest quality building materials, in accordance with all standards in the industry and pursuant to all applicable codes, etc., and that the exterior cladding that was to be installed on the buildings would be stucco, rather than the synthetic EIFS material.

25.     The Twelfth Amended Complaint further alleges that the original budget failed to include provisions for onsite maintenance personnel, costs associated with opening the beach and providing life guards, and significantly under-budgeted other costs, such as insurance and security.  The Twelfth Amended Complaint characterizes these as material misrepresentations.

26.     During the initial years of its existence, the Association was dominated and controlled by Renaissance Estates, and had no independent existence.  The initial members of the Board of Directors of the Association were appointed by Renaissance Estates.

27.     After Renaissance Estates closed on 75% of the units, the Members took control of the Board of Directors of the Association pursuant to the condominium By-laws.

28.     Upon information and belief, no dwelling units at Renaissance were completed or sold by Renaissance Estates prior to July 1, 2000.

29.     Upon information and belief, only twenty of the dwelling units were completed and sold between July 1, 2000 and July 1, 2001.

30.     Upon information and belief, turnover of control of the Renaissance by Renaissance Estates to the Association occurred in or about September 2002.

31.     Upon information and belief, the last certificate of occupancy for a dwelling unit at the Renaissance was issued on October 8, 2003. The last dwelling unit at Renaissance was sold by Renaissance Estates and RMI on December 16, 2004.

32.     Allegedly, at the time the Members took control in September 2002, the Association discovered that all of the buildings contained EIFS as their exterior cladding, not stucco.

33.     The Twelfth Amended Complaint alleges that the EIFS was installed without drainage openings, without proper flashings and sealants, and was otherwise improperly installed pursuant to the installation specifications and industry standards.  As a consequence, the Association alleges that the EIFS will not shed water away from the substrate, thereby violating applicable building codes and causing damage to the substrate and subframing.  The Association alleges that the EIFS must be completely removed and replaced with new exterior cladding and that all damages must be repaired.

34.     The Association also allegedly became aware of other deficiencies in the design and construction of the common elements, including the following:

     a.     Improperly designed and constructed roofs and improper installation of roofing materials and their interface with siding materials including, but not limited to, improper or missing flashings, missing or inadequately installed ice and water shields, and improper installation of roofing materials;

     b.     Improperly designed and/or deficiently installed or missing roof water management systems including, but not limited to, inadequate or missing gutters, leaders and downspouts;

     c.     Improperly designed and/or constructed sanitary sewer system, resulting in, inter alia, frozen pipes and discharge of effluent into the interiors of units posing a threat to health and safety;

     d.     Improper installation of PVC piping in lieu of the appropriate cast-iron piping in the sanitary sewer system, and installation of the PVC pipes below the frost line;

     e.     Failure to caulk and seal the exteriors of the buildings at Renaissance in accordance with the approved plans, manufacturer's specifications, standards in the industry and applicable state and local building codes;

f.      Improperly designed and/or deficiently constructed sea wall/revetment;

g.      Failure to construct drainage systems in accordance with approved plans and standards in the industry;

h.      Improperly designed and/or deficiently constructed decks which, inter alia, result in unprotected openings in the EIFS, thereby permitting intrusion and collection of moisture and water behind the EIFS;

i.      Decks which were constructed from wood materials instead of the concrete promised by the Developer;

j.      Decks, plazas, and foundations that were coated with a finish material/sealant, and the cracks were filled and sealed, in a deficient manner;

k.      Numerous fire hazards and code violations including, but not limited to:  heat-tracing of sanitary sewage pipes which caused a fire; use of Pella sliding glass door units with standard glass in fixed wooden frames as window glazing in the fire stairs for buildings 2 and 4; fire alarms that cannot be heard within units; faulty electrical wiring and inadequate ventilation in various utility closets;

l.      Improperly installed railings, vents, pipes, conduits, wires, cables and the like which penetrate the EIFS and permit intrusion and collection of moisture and water behind the EIFS;

m.      Improperly designed and/or constructed water meter pits;

n.      Improperly designed and/or constructed fire suppression system in Buildings 1 through 4 at Renaissance including, but not limited to, filling the system in Building 1 with glycol instead of glycerin in violation of the manufacturer's specifications and the applicable building code, thereby requiring replacement of the entire system in Building 1 and causing severe direct and consequential damage in Buildings 1, 2, 3 and 4;

o.      Improperly designed and/or constructed dryer vents within Renaissance;

p.      Improperly installed windows, exterior doors and failure to properly caulk and seal windows, doors and other penetrations at Renaissance;

q.      Improperly installed the pump station at Renaissance;

r.      Improper site engineering work including, but not limited to, faulty drainage which has caused the floors in the garages to be flooded with water, causing a threat to public health and safety when that water freezes.  The flooding has rendered unusable many of the garage storage units in Buildings 2, 3 and 4

and has caused damage to unit owners' personal property which the Association has been forced to pay for;

s.      Improperly designed and/or constructed parking garage resulting in flooding and icing that are a public health hazard in sub-freezing weather;

t.      The Developer failed to construct the retaining walls around the tennis court in accordance with the construction drawings and standards in the industry;

u.      Failure to install the electrical and HVAC systems pursuant to the approved plans, manufacturer's installation specifications, applicable building and fire codes and standards in the industry;

v.      The HVAC, electrical, railing, and plumbing subcontractors at Renaissance made penetrations through the roofs of buildings at Renaissance which they never sealed, causing damage to the roofs and to the sheathing and framing of the roof systems; and

w.      Failure to design and install structural elements sufficient to support the improvements and interior amenities reasonably to be expected to be installed in high-end ocean-front dwellings.

35.      All of the design and construction at the Renaissance was performed by Renaissance Construction and/or its subcontractors and was performed on behalf of the Renaissance Defendants.

36.      The Twelfth Amended Complaint only contains allegations of property damage to the Renaissance itself, and does not allege property damage to any third-party property.

37.      The claims for relief in the Twelfth Amended Complaint allege Consumer Fraud Act violations against Renaissance Estates, RMI, and Renaissance Construction (Count I); breach of the duty to exercise reasonable care in the design and construction of Renaissance and creation of adequate reserves for the Association's budget against Renaissance Estates, RMI, and Renaissance Construction (Count II); breach of fiduciary duty for maintenance, management and operation of the Renaissance against Renaissance Estates, and RMI (Count III); breach of express warranties in design and construction at the Renaissance against Renaissance Estates and RMI (Count IV); breach of implied warranties of workmanship against Renaissance Estates,

RMI and Renaissance Construction (Count V); negligent misrepresentation of workmanship against Renaissance Estates and RMI (Count VI); breach of PREDFDA warranties against Renaissance Estates, and RMI (Count VII); PREDFDA misrepresentations against Renaissance Estates, and RMI (Count VIII); turnover of Association records pursuant to PREDFDA and the New Jersey Condominium Act against Renaissance Estates, and RMI (Count IX); failure to pay common assessments expenses against Renaissance Estates, and RMI (Count X); failure to pay a proportionate share of reserves according to the Public Offering Statement against Renaissance Estates, and RMI (Count XI); and failure to provide adequate operating budgets by accountants engaged by Renaissance Estates against Renaissance Estates and RMI (Count XII).

### ONEBEACON'S DENIALS OF COVERAGE AND RESERVATIONS OF RIGHTS

38.　OneBeacon has disclaimed all duty to defend and indemnify Renaissance Defendants in the Civil Action under primary and umbrella policies that were in effect for the 1999 – 2000 policy period.  Those policies are not at issue in this declaratory judgment action.

39.　OneBeacon is providing a defense to the Renaissance Defendants for all claims asserted against them in the Civil Action under the American Employers Policy and the Commercial Union Policy subject to reservation of rights letters dated June 15, 2005 and October 2, 2006.

40.　OneBeacon brings this declaratory judgment action seeking a declaration that no coverage exists for any of the claims against any of the Renaissance Defendants under the policies at issue.

### COUNT I

### Underlying Claims Not Within Insuring Agreement

41.　OneBeacon repeats the allegations of Paragraphs 1 through 45 as though set forth at length.

42.     OneBeacon owes no duty to indemnify the Renaissance Defendants for the claims asserted against them in the Civil Action because the claims do not fall within the insuring agreements contained in the OneBeacon policies at issue.

43.     The American Employers Policy contains the following insuring agreement:

> a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
>
> *   *   *
>
> b.     This insurance applies to "bodily injury" and "property damage" only if:
>
> (1)     The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>
> (2)     The "bodily injury" or "property damage" occurs during the policy period.

44.     The American Employers Policy defines "occurrence" to mean an "accident, including continuous or repeated exposure to substantially the same general harmful conditions."

45.     The American Employers Policy defines "property damage" as follows: "a. Physical injury to tangible property, including all resulting loss of use of that property.  All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or b. Loss of use of tangible property that is not physically injured.  All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

46.     The Commercial Union Policy contains the following insuring agreement:

> a.     We will pay those sums that the "insured" becomes legally obligated to pay as damages in excess of "underlying insurance," or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury," "property damage," "personal injury" or "advertising injury" to which this insurance applies.

    **(1)**   This insurance applies only to "bodily injury" or "property damage" which occurs during the policy period. The "bodily injury" or "property damage must be caused by an "occurrence" which takes place anywhere.

47.   The Commercial Union Policy contains the following "condition" regarding the maintenance of underlying insurance:

    **10.**   **Maintenance of Underlying Insurance**

    **a.**   You will maintain the "underlying insurance" in full effect during the term of this policy without deduction of coverage or limits except for a reduction of limit or limits solely by payment of damages because of "bodily injury" (including claims paid under the Medical Payments Coverage as described in the "underlying insurance"), "property damage," "personal injury" or "advertising injury" to which the insurance applies (except for Medical Payments Coverage as described in the "underlying insurance") caused by an "occurrence" which takes place during the policy period of this policy or caused by an "offense" which is committed during the policy period of this policy.

    **b.**   If you fail to maintain the "underlying insurance," this insurance shall not replace the "underlying insurance" but shall apply as if the "underlying insurance" was valid and collectible.

48.   The Commercial Union Policy defines "occurrence" to mean "an accident including continuous or repeated exposure to substantially the same general harmful conditions."

49.   The Commercial Union Policy defines "property damage" as follows: **"a.** Physical injury to tangible property including all resulting loss of use of that property; or **b.** Loss of use of tangible property that is not physically injured."

50.     The Commercial Union Policy defines "Underlying Insurance" to mean "the insurance policies listed as Underlying Insurance in the Declarations, which provide the coverage and limits stated."

51.     There is no coverage under any of the OneBeacon policies for any of the alleged damages arising out of the faulty workmanship that was performed by or on behalf of the Renaissance Defendants.  Moreover, the claims in the Civil Action do not allege "property damage" caused by an "occurrence" during the relevant policy period.

52.     Accordingly, OneBeacon owes no duty to indemnify Renaissance Estates against Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, or XII of the Civil Action under any of the OneBeacon policies at issue.

53.     OneBeacon owes no duty to indemnify RMI against Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, or XII of the Civil Action under any of the OneBeacon policies at issue.

54.     OneBeacon owes no duty to indemnify Renaissance Construction against Counts I, II, or V of the Civil Action under any of the OneBeacon policies at issue.

55.     An actual controversy exists between the parties concerning the respective rights of the Renaissance Defendants and OneBeacon regarding OneBeacon's indemnity obligations in connection with the claims asserted against the Renaissance Defendants in the Civil Action.

56.     By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities that exist between the parties in connection with the OneBeacon policies.

WHEREFORE, OneBeacon respectfully requests judgment in its favor and against Defendants, as follows:

a.     Declaring that there is no obligation to indemnify the Renaissance Defendants against the claims for relief asserted against the Renaissance Defendants in the Civil Action;

b.     Declaring the rights and other legal obligations of the Plaintiffs and the Defendants arising under the aforementioned insurance policies.

c.     Awarding OneBeacon the costs and reasonable attorney's fees incurred; and

d.     Awarding such other and further relief as the Court deems just and proper under the circumstances.

## COUNT II

### "Business Risk" Exclusions

57.     OneBeacon repeats the allegations of Paragraphs 1 through 65 as though set forth at length.

58.     This Count is pleaded in the alternative.

59.     The American Employers Policy contains the following exclusions, which provide, in relevant part, as follows:

**2.     Exclusions**

This insurance does not apply to:

\* \* \*

**j.     Damage To Property**

"Property damage" to:

**(1)**     Property you own, rent, or occupy;

**(2)**     Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

14

(5)    That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or

(6)    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

**k.**    **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**l.**    **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

**m.**    **Damage to Impaired Property or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

60.    The Commercial Union Policy contains the following exclusions:

h.    "Property damage" to "your product" arising out of it or any party of it.

i.    "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

j.    "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) a defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

15

(2) a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

61.     The Commercial Union Policy contains the following endorsement:

**CONTRACTORS - LIMITATION OF COVERAGE**

This endorsement modifies insurance under the following:

**COMMERCIAL UMBRELLA COVERAGE**

**1.**     Exclusion g. is replaced by the following:

**g.**     Except insofar as coverage is available to the "insured" for the full limits of insurance as shown for policies of "underlying insurance" in the Declarations, this insurance does not apply to "property damage" to
**(1)**     Property owned or occupied by or rented to the "insured";

62.     The OneBeacon policies do not cover damage alleged in the Twelfth Amended Complaint that was allegedly sustained to property that was owned or occupied by the Renaissance Defendants, or to premises sold by the Renaissance Defendants to the extent the alleged damage arises out of any part of the premises.  Nor do the policies cover damage to that part of property on which the Renaissance Defendants or any contractor or subcontractor were working directly or indirectly on their behalf to the extent the damage occurred while performing operations.  Nor do the policies cover damage to that particular part of any property that must be restored, repaired or replaced because the work of the Renaissance Defendants was incorrectly performed.

63.     The OneBeacon policies do not provide coverage for property damage to the Renaissance Defendants' product arising out of it or any part or it, nor to the Renaissance Defendants' work arising out of it or any part of it and included in the products-completed operations hazard.

64.     The OneBeacon policies do not provide coverage for property damage to impaired property or property that has not been physically injured, if the damage arose out of a defect, deficiency, inadequacy or dangerous condition in the Renaissance Defendants' work, or a delay or failure by the Renaissance Defendants or anyone acting on their behalf to perform a contract or agreement in accordance with its terms.

65.      The work at the Renaissance was not completed until all certificates of occupancy were issued in December 2004.  Renaissance Estates did not relinquish control over the Association until 2002, which was after the policy period of the OneBeacon policies at issue. Therefore, there is no coverage for any property damage allegedly sustained to any portion of the Renaissance when it was owned by any of the Defendants.

66.     Most, if not all, of the property damage alleged in the Civil Action consists of damage to the insureds' product or work, or damage to impaired property or property that has not been physically injured, arising out alleged defects in the Renaissance Defendants' work, and out of delays or failures by the Renaissance Defendants to perform contracts and agreements in accordance with their terms.

67.     Accordingly, OneBeacon owes no duty to indemnify Renaissance Estates against Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, or XII of the Civil Action under any of the OneBeacon policies at issue.

68.     OneBeacon owes no duty to indemnify RMI against Counts I, II, III, IV, V, VI, VII, VIII, IX, X, XI, or XII of the Civil Action under any of the OneBeacon policies at issue.

69.     OneBeacon owes no duty to indemnify Renaissance Construction against Counts I, II, or V of the Civil Action under any of the OneBeacon policies at issue.

70.     An actual controversy exists between the parties concerning the respective rights of the Renaissance Defendants and OneBeacon regarding OneBeacon's indemnity obligations in connection with the claims asserted against the Renaissance Defendants in the Civil Action.

71.     By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities that exist between the parties in connection with the OneBeacon policies.

WHEREFORE, OneBeacon respectfully requests judgment in its favor and against Defendants, as follows:

a.     Declaring that there is no obligation to indemnify the Renaissance Defendants against the claims for relief asserted against the Renaissance Defendants in the Civil Action;

b.     Declaring the rights and other legal obligations of the Plaintiffs and the Defendants arising under the aforementioned insurance policies.

c.     Awarding OneBeacon the costs and reasonable attorney's fees incurred; and

d.     Awarding such other and further relief as the Court deems just and proper under the circumstances.

## COUNT III

### Contractual Liability Exclusion

72.     OneBeacon repeats the allegations of Paragraphs 1 through 81 as though set forth at length.

73.     The American Employers Policy contains the following exclusion:

**2.     Exclusions**

This insurance does not apply to:

\* \* \*

### b.     Contractual Liability

"Bodily injury" or "property damage" for which the
insured is obligated to pay damages by reason of the
assumption of liability in a contract or agreement.

74.     The Commercial Union Policy contains the following exclusion:

### 4.     EXCLUSIONS

This insurance does not apply to

\* \* \*

a.     "Bodily injury" or "property damage" for
which the "insured" has assumed liability in
a contract or agreement if such "bodily
injury" or "property damage" is caused by
an "occurrence" which takes place in whole
or in part before the contract or agreement is
made.

75.     The OneBeacon policies do not provide coverage for liabilities assumed in a
contract.  Thus, the policies do not provide coverage for breach of express or implied warranties,
misrepresentations, failure to turnover records, claims for improper accounting or claims for
alleged breaches of funding obligations as set forth in the Twelfth Amended Complaint.

76.     Accordingly, OneBeacon owes no duty to indemnify Renaissance Estates against
Counts IV, V, VI, VII, VIII, IX, X, XI, or XII of the Civil Action under any of the OneBeacon
policies at issue.

77.     OneBeacon owes no duty to indemnify RMI against Counts IV, V, VI, VII, VIII,
IX, X, XI, or XII of the Civil Action under any of the OneBeacon policies at issue.

78.     OneBeacon owes no duty to indemnify Renaissance Construction against Count V
of the Civil Action under any of the OneBeacon policies at issue.

79.     An actual controversy exists between the parties concerning the respective rights of the Renaissance Defendants and OneBeacon regarding OneBeacon's indemnity obligations in connection with the claims asserted against the Renaissance Defendants in the Civil Action.

80.     By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities that exist between the parties in connection with the OneBeacon policies.

WHEREFORE, OneBeacon respectfully requests judgment in its favor and against Defendants, as follows:

a.     Declaring that there is no obligation to indemnify the Renaissance Defendants against the claims for relief asserted against the Renaissance Defendants in the Civil Action;

b.     Declaring the rights and other legal obligations of the Plaintiffs and the Defendants arising under the aforementioned insurance policies.

c.     Awarding OneBeacon the costs and reasonable attorney's fees incurred; and

d.     Awarding such other and further relief as the Court deems just and proper under the circumstances.

## COUNT IV

### Expected or Intended Injury

81.     OneBeacon repeats the allegations of Paragraphs 1 through 91 as though set forth at length.

82.     The American Employers Policy contains the following exclusion:

**2.     Exclusions**

This insurance does not apply:

     **a.**     **Expected Or Intended Injury**

"Bodily injury" or "property damage" expected or
intended from the standpoint of the insured. This
exclusion does not apply to "bodily injury"
resulting from the use of reasonable force to protect
persons or property.

\*   \*   \*

83.    The Commercial Union Policy contains the following exclusion:

**4.**     **EXCLUSIONS**

This insurance does not apply to:

**a.**     "Bodily injury" or "property damage" expected or intended
from the standpoint of the "insured." This exclusion does
not apply to "bodily injury" resulting from the use of
reasonable force to protect persons or property.

84.    There is no coverage under the OneBeacon policies for allegations of property damage that is expected or intended from the standpoint of the Renaissance Defendants.  Thus, there is no coverage under the OneBeacon policies for damage allegedly caused by consumer fraud, misrepresentation, alleged intentional acts, or alleged statutory and regulatory violations by the Renaissance Defendants as set forth in the Twelfth Amended Complaint.

85.    Accordingly, OneBeacon owes no duty to indemnify Renaissance Estates against Counts I, VI, VII, VIII, IX, X, or XI of the Civil Action under any of the OneBeacon policies at issue.

86.    OneBeacon owes no duty to indemnify RMI against Counts I, VI, VII, VIII, IX, X, or XI of the Civil Action under any of the OneBeacon policies at issue.

87.    OneBeacon owes no duty to indemnify Renaissance Construction against Count I of the Civil Action under any of the OneBeacon policies at issue.

88.     An actual controversy exists between the parties concerning the respective rights of the Renaissance Defendants and OneBeacon regarding OneBeacon's indemnity obligations in connection with the claims asserted against the Renaissance Defendants in the Civil Action.

89.     By reason of the foregoing, a declaratory judgment is both necessary and proper in order to set forth and determine the rights, obligations and liabilities that exist between the parties in connection with the OneBeacon policies.

WHEREFORE, OneBeacon respectfully requests judgment in its favor and against Defendants, as follows:

  a.     Declaring that there is no obligation to indemnify the Renaissance Defendants against the claims for relief asserted against the Renaissance Defendants in the Civil Action;

  b.     Declaring the rights and other legal obligations of the Plaintiffs and the Defendants arising under the aforementioned insurance policies.

  c.     Awarding OneBeacon the costs and reasonable attorney's fees incurred; and

  d.     Awarding such other and further relief as the Court deems just and proper under the circumstances.

## COUNT V

### No Coverage for Breach of Fiduciary Duty

90.     OneBeacon repeats the allegations of Paragraphs 1 through 101 as though set forth at length.

91.     The OneBeacon policies only provide coverage for "property damage" that is caused by an "occurrence."

92.     The allegations of Paragraph III in the Twelfth Amended Complaint do not allege an "occurrence" within the meaning of the OneBeacon policies.

93.     Accordingly, OneBeacon owes no duty to indemnify Renaissance Estates, RMI, against Count III of the Civil Action under any of the OneBeacon policies at issue.

WHEREFORE, OneBeacon respectfully requests judgment in its favor and against Defendants, as follows:

a.     Declaring that there is no obligation to indemnify the Renaissance Defendants against Count III of the Civil Action;

b.     Declaring the rights and other legal obligations of the Plaintiffs and the Defendants arising under the aforementioned insurance policies.

c.     Awarding Plaintiffs the costs and reasonable attorney's fees incurred; and

d.     Awarding such other and further relief as the court deems just and proper under the circumstances.

## PRAYER FOR RELIEF

OneBeacon prays for judgment in its favor and a declaration that:

1.     OneBeacon is not obligated to indemnify the Renaissance Defendants for the claims asserted against them in the Civil Action because the claims do not fall within the insuring agreements of the OneBeacon policies at issue.

2.     OneBeacon is not obligated to indemnify the Renaissance Defendants for the claims asserted against them in the Civil Action because the claims are excluded from coverage by the "business risks" exclusions contained in the OneBeacon policies at issue.

3.     OneBeacon is not obligated to indemnify the Renaissance Defendants for the claims asserted against them in the Civil Action because the claims are excluded from coverage by the contractual liability exclusions contained in the OneBeacon policies at issue.

4.      OneBeacon is not obligated to indemnify the Renaissance Defendants for the claims asserted against them in the Civil Action because the claims are excluded from coverage by the expected or intended injury exclusions contained in the OneBeacon policies at issue.

5.      OneBeacon is not obligated to indemnify the Renaissance Defendants for the breach of fiduciary duty claims asserted against them in the Civil Action.

COZEN O'CONNOR


By: /s/ Jacob C. Cohn
          Jacob C. Cohn, Esquire
          Matthew J. Siegel, Esquire

          Attorneys for Plaintiffs

Dated: July 7, 2010